IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM P. HITE and spouse ........ )
PATRICIA A. HITE ...................... )
.............................................. ) ...... Case No. 09 CV 3454
.................... Plaintiffs, ......... )
.............................................. ) ...... Judge John W. Darrah
vs. .......................................... )
.............................................. ) ...... Magistrate Judge Morton Denlow
.............................................. )
APEX OIL COMPANY, INC., et al. )
.............................................. )
.................... Defendants. ......... )

## PLAINTIFFS' SECOND AMENDED FEDERAL COMPLAINT AND JURY DEMAND

Plaintiffs WILLIAM P. HITE and PATRICIA A. HITE, wife of WILLIAM P.

HITE, as and for their complaint against Defendants APEX OIL COMPANY, INC.,

successor in interest to CLARK OIL COMPANY, BP AMOCO CHEMICAL

COMPANY, f/k/a and successor in interest to AMOCO CORPORATION, BP

CHEMICALS AMERICAS, INC., f/k/a and successor in interest to AMOCO

CORPORATION, BP CHEMICALS INC., f/k/a and successor in interest to AMOCO

CORPORATION, BP CORPORATION NORTH AMERICA, INC., f/k/a and successor

in interest to AMOCO CORPORATION, BP PRODUCTS NORTH AMERICA, INC.,

f/k/a and successor in interest to AMOCO OIL COMPANY, COMMONWEALTH

EDISON COMPANY, EXELON GENERATION COMPANY, LLC, f/k/a and successor

in interest to COMMONWEALTH EDISON, EXXON MOBIL OIL CORPORATION,

EXXON MOBIL CORPORATION, MOBIL CHEMICAL COMPANY, INC., UNION

OIL COMPANY OF CALIFORNIA, UNITED STATES STEEL CORPORATION, USI

CHEMICALS COMPANY, INC., f/k/a and successor in interest to NORTHERN

PETROCHEMICAL COMPANY, (hereinafter "Defendants") allege as follows:

1.      WILLIAM P. HITE and PATRICIA A. HITE are residents of the State of

Maryland.

2.      Defendant APEX OIL COMPANY, INC., the successor in interest to

CLARK OIL COMPANY, is incorporated in the State Missouri with its principal place

of business in the State of Missouri.

3.      Defendant BP AMOCO CHEMICAL COMPANY, f/k/a and successor in

interest to AMOCO CORPORATION, is incorporated in the State of Delaware with its

principal place of business in the State of Illinois.

4.      Defendant BP CHEMICALS AMERICAS, INC., f/k/a and successor in

interest to AMOCO CORPORATION, is incorporated in the State of Delaware with its

principal place of business in the State of New York.

5.      Defendant BP CHEMICALS INC., f/k/a and successor in interest to

AMOCO CORPORATION, is incorporated in the State of Ohio with its principal place

of business in the State of Illinois.

6.      Defendant BP CORPORATION NORTH AMERICA, INC., f/k/a and

successor in interest to AMOCO CORPORATION, is incorporated in the State of Indiana

with its principal place of business in the State of Illinois.

7.      Defendant BP PRODUCTS NORTH AMERICA, INC., f/k/a and

successor in interest to AMOCO OIL COMPANY, is incorporated in the State of

Maryland with its principal place of business in the State of Texas.

8.      Defendant COMMONWEALTH EDISON COMPANY is incorporated in the State of Illinois with its principal place of business in the State of Illinois.

9.      Defendant EXELON GENERATION COMPANY, LLC, f/k/a and successor in interest to COMMONWEALTH EDISON, is incorporated in the State of Delaware with its principal place of business in the State of Illinois.

10.     Defendant EXXON MOBIL OIL CORPORATION is incorporated in the State of New York with its principal place of business in the State of Texas.

11.     Defendant EXXON MOBIL CORPORATION is incorporated in the State of New Jersey with its principal place of business in the State of Texas.

12.     Defendant MOBIL CHEMICAL COMPANY, INC., is incorporated in the State of Delaware with its principal place of business in the State of Texas.

13.     Defendant UNION OIL COMPANY OF CALIFORNIA is incorporated in the State of California with its principal place of business in the State of Louisiana.

14.     Defendant UNITED STATES STEEL CORPORATION is incorporated in the State of Delaware with its principal place of business in the State of Pennsylvania.

15.     Defendant USI CHEMICALS COMPANY, INC., f/k/a and successor in interest to NORTHERN PETROCHEMICAL COMPANY, is incorporated in the State of Delaware with its principal place of business in the State of Illinois.

16.     Plaintiff WILLIAM P. HITE was at all times relevant to this complaint employed by Phillips Getschow as a pipefitter.  As an employee of Phillips Getschow WILLIAM P. HITE worked at various pipefitting jobs at various sites, always functioning under the sole supervision and direction and solely as an employee of Phillips Getschow.

17.   Plaintiff WILLIAM P. HITE was periodically employed by Phillips Getschow to work as a pipefitter at the following premises (hereinafter referred to as "Benzene Premises Defendants") and at various other locations throughout the State of Illinois from approximately 1967 to 1985 to perform repair, maintenance, turnaround and replacement work and not construction or construction of improvements:

a.   APEX OIL COMPANY, INC., successor in interest to CLARK OIL COMPANY, at the Blue Island, Illinois facility at various times during the period of 1972-1974;

b.   BP CHEMICALS AMERICAS, INC., f/k/a and successor in interest to AMOCO CORPORATION, BP CHEMICALS INC., f/k/a and successor in interest to AMOCO CORPORATION, BP CORPORATION NORTH AMERICA, INC., f/k/a and successor in interest to AMOCO CORPORATION, BP PRODUCTS NORTH AMERICA, INC., f/k/a and successor in interest to AMOCO OIL COMPANY, at the Riley Road, Whiting Refinery in or about 1984;

c.   EXXON MOBIL OIL CORPORATION, EXXON MOBIL CORPORATION, in the Joliet, Illinois facility in or about 1983;

d.   MOBIL CHEMICAL COMPANY, INC., in the Joliet, Illinois facility in or about 1983;

e.   UNION OIL COMPANY OF CALIFORNIA, in the Lemont, Illinois facility at various times during the period of 1976-1981; and

    f.   USI CHEMICALS COMPANY, INC., f/k/a and successor in interest to NORTHERN PETROCHEMICAL COMPANY, in the Morris, Illinois facility in or about May of 1983.

18.   During the course of his employment with Phillips Getschow performing work at the sites listed above, as well as at other sites, WILLIAM P. HITE was exposed to, inhaled and absorbed benzene which was manufactured, designed, distributed, sold or processed by the following defendants (hereinafter referred to as "Supplier Defendants"):

    a.   APEX OIL COMPANY, INC., successor in interest to CLARK OIL COMPANY, which processed the benzene to which Mr. Hite was exposed in its benzene unit;

    b.   BP AMOCO CHEMICAL COMPANY, f/k/a and successor in interest to AMOCO CORPORATION, BP CHEMICALS AMERICAS, INC., f/k/a and successor in interest to AMOCO CORPORATION, BP CHEMICALS INC., f/k/a and successor in interest to AMOCO CORPORATION, BP CORPORATION NORTH AMERICA, INC., f/k/a and successor in interest to AMOCO CORPORATION, BP PRODUCTS NORTH AMERICA, INC., f/k/a and successor in interest to AMOCO OIL COMPANY, which processed the benzene and/or had benzene in the fuel lines to which Mr. Hite was exposed while working at the Riley Road Whiting facility;

    c.   EXXON MOBIL OIL CORPORATION, EXXON MOBIL CORPORATION, and MOBIL CHEMICAL COMPANY, INC., all of which supplied benzene to the facilities in which Mr. Hite worked, as well

as exposing WILLIAM P. HITE to the benzene that was being used in the

Mobil Chemical facility's ethylene unit when he worked there;

    d.   UNION OIL COMPANY OF CALIFORNIA which supplied benzene to

the facilities in which Mr. Hite worked; and

19.     UNITED STATES STEEL CORPORATION, and USI CHEMICALS

COMPANY, INC., f/k/a and successor in interest to NORTHERN PETROCHEMICAL

COMPANY, which supplied the benzene contained in the drip oil or raffinate used in

Liquid Wrench which was used repeatedly and frequently by Mr. Hite throughout his

career as a pipefitter.

20.     Plaintiff WILLIAM P. HITE was exposed to benzene and benzene-

containing products that were placed in the stream of commerce by United States Steel

Corporation.  WILLIAM P. HITE used Liquid Wrench to perform numerous tasks from

time to time during his employment.  United States Steel Corporation, through its agents,

employees, servants, representatives, subsidiaries and/or predecessors in interest, was

engaged in the shipping of a benzene-containing product called drip oil and/or raffinate

for its use in Liquid Wrench.  The drip oil and/or raffinate used in Liquid Wrench

contained benzene, and Liquid Wrench is a benzene-containing product.

21.     The Supplier Defendants affirmatively withheld and/or concealed from

WILLIAM P. HITE the extent of the danger from contact with and exposure to benzene.

WILLIAM P. HITE's contact with and exposure to benzene was without his informed

consent.

22.     Plaintiff WILLIAM P. HITE was employed by Phillips Getschow to work

periodically as a pipefitter at the Dresden Nuclear Power Plant owned and operated by

EXELON GENERATION COMPANY, LLC, f/k/a and successor in interest to

COMMONWEALTH EDISON COMPANY (hereinafter referred to as "Radiation

Premises Defendants"), in the State of Illinois from about 1968 to 1985.

23.    During the course of his employment with Phillips Getschow doing

pipefitting work at the Dresden Nuclear Power Plant owned and operated by the

Radiation Premises Defendants, WILLIAM P. HITE, was over-exposed to ionizing

radiation.

24.    Plaintiff WILLIAM P. HITE was needlessly exposed to benzene and

benzene-containing products and materials and over-exposed to radiation.

25.    As a direct and proximate result of WILLIAM P. HITE's exposures to

benzene and benzene-containing products and materials and over-exposures to radiation,

WILLIAM P. HITE has suffered and continues to suffer personal injuries including the

development of multiple myeloma.  Both benzene and radiation were a proximate cause

of the injuries to WILLIAM P. HITE.  Benzene and radiation were each a sufficient but

not necessarily the exclusive cause of the injuries to WILLIAM P. HITE.

26.    Plaintiff WILLIAM P. HITE has been damaged in the following

particulars:

    (a)    WILLIAM P. HITE has and will continue to suffer great physical pain,
suffering and mental anguish;

    (b)    WILLIAM P. HITE has and will continue to incur hospital and/or medical
and/or pharmaceutical and/or other expenses;

    (c)    WILLIAM P. HITE has and will continue to suffer physical
impairments/disfigurements;

    (d)    WILLIAM P. HITE has and will continue to suffer permanent, partial
disability;

(e)     WILLIAM P. HITE will require medical monitoring to aid in monitoring the progression of his illness and for the early detection and treatment of any other cancers or related illnesses;

(f)     WILLIAM P. HITE has and will continue to require domestic health and nursing care due to his disability;

(g)     Prior to contracting multiple myeloma, WILLIAM P. HITE was extremely active and participated in numerous hobbies and activities, all of which he has been prevented from engaging in due to the development of the his illness and injuries.

(h)     WILLIAM P. HITE has been and will continue to be prevented from participating in and enjoying the benefits of a full and complete life as a result of contracting multiple myeloma;

(i)     WILLIAM P. HITE has and will continue to suffer loss of earning capacity and loss of earnings; and

(j)     WILLIAM P. HITE has incurred and will continue to incur substantial expenses for medical, hospital and health care and for related expenses.

27.     Plaintiff WILLIAM P. HITE was first diagnosed with multiple myeloma in April of 2008.  It was after April of 2008 that WILLIAM P. HITE was first informed that his multiple myeloma could be related to his exposures to benzene, benzene-containing products and materials as well as over-exposure to radiation.   WILLIAM P. HITE discovered his injury and its possible relationship to his exposures to benzene and benzene-containing products, and to his overexposure to radiation, within two years prior to his filing of the complaint on April 15, 2009.

<u>FIRST CAUSE OF ACTION</u>

<u>NEGLIGENCE OF THE SUPPLIER DEFENDANTS</u>

28.     Plaintiffs incorporate herein all of the allegations set forth above as if fully restated here.

29.     The Supplier Defendants were at all material times engaged in the business of manufacturing, distributing, shipping, selling, transporting, purchasing,

and/or otherwise placing into the stream of commerce or otherwise exposing WILLIAM P. HITE to benzene and benzene-containing products and materials.  These benzene and benzene-containing products and materials were expected to reach and in fact did reach WILLIAM P. HITE without substantial change in their condition.  The benzene and benzene-containing products and materials were in a defective condition and unreasonably dangerous when manufactured, distributed, shipped, sold, transported, and/or purchased by the Supplier Defendants.  The defective and unreasonably dangerous condition of the Supplier Defendants' benzene and benzene-containing products and materials was a proximate cause of WILLIAM P. HITE'S illness, injuries and damages.

30.    The Supplier Defendants committed certain acts and/or omissions that constitute negligence.  Plaintiffs are not claiming strict product liability.  The Supplier Defendants knew, or in the exercise of ordinary care, should have known, of the unreasonable risk of harm posed by exposure to their benzene and benzene-containing products and materials.  Each of the Supplier Defendants was negligent because it:

(a)    Knew, or with the exercise of reasonable care should have known, that their products contained the hazardous carcinogenic chemical benzene as a product component and/or contaminant which was in a defective and unreasonably dangerous condition and that use of their products would cause cancer;

(b)    Failed to warn WILLIAM P. HITE of the known or reasonably foreseeable danger of contracting cancer from the use of the Supplier Defendants' defective and unreasonably dangerous products;

(c)    Knew, or with the exercise of reasonable care should have known, that their products containing the hazardous carcinogenic chemical benzene as a product component and/or contaminant would be used by users or consumers such as WILLIAM P. HITE, in the manner in which the Supplier Defendants' products were intended to be used;

(d)     Failed to instruct WILLIAM P. HITE in the proper handling of the Supplier Defendants' benzene and benzene-containing products and materials to protect himself from harm;

(e)     Failed to provide an adequate warning and/or instruction with regard to their benzene and benzene-containing products and materials;

(f)     Failed to perform testing of their benzene and benzene-containing products and materials to determine human health effects;

(g)     Failed to recommend the use of adequate personal protective equipment in handling or working with or around their benzene and benzene-containing products and materials;

(h)     Failed to conduct monitoring and/or testing of persons who handled and worked with their benzene and benzene-containing products and materials;

(i)     Failed to recommend adequate engineering controls to reduce or eliminate exposure of persons working with or around their benzene and benzene-containing products and materials;

(j)     Failed to place a safer product into the stream of commerce that would have prevented WILLIAM P. HITE's disease without impairing the product's utility, although a safer product was economically and technologically feasible at the time the product left the control of the Supplier Defendants;

(k)     Failed to create and maintain data and records regarding health effects of exposure to benzene and benzene-containing products and materials;

(l)     Failed to test, monitor and research the human health effects of exposure to benzene and benzene-containing products and materials;

(m)     Included benzene in their products and processes when adequate substitutes for these carcinogenic chemicals were available;

(n)     Placed benzene and benzene-containing products and materials into the stream of commerce when adequate substitutes were available;

(o)     Included benzene in their products and processes, even though it was completely foreseeable and could or should have been anticipated that persons such as WILLIAM P. HITE working with or around these benzene and benzene-containing products and materials would inhale, ingest, or otherwise absorb the carcinogens;

(p)     Included benzene in their products and processes when the Supplier
        Defendants knew or should have known that said carcinogenic chemicals
        would have a toxic, poisonous and highly deleterious affect upon the
        health of persons handling, ingesting, or otherwise absorbing them,
        including WILLIAM P. HITE;

(q)     Failed to recall or cease using benzene and benzene-containing products
        and materials which the Supplier Defendants had designed, manufactured,
        sold, distributed, purchased, or were currently using;

(r)     Provided WILLIAM P. HITE with benzene and benzene-containing
        products and materials which he was required to work with and be
        exposed to while performing his duties; and

(s)     Committed such other acts and/or omissions as may be shown by the
        evidence.

31.     The Supplier Defendants are liable to plaintiffs for negligence because
their acts and/or omissions identified above, independently or in combination with one
another, were a proximate cause of WILLIAM P. HITE's illness, injuries and damages.

<u>SECOND CAUSE OF ACTION</u>

<u>NEGLIGENCE OF BENZENE PREMISES DEFENDANTS</u>

33.     Plaintiffs incorporate herein all of the allegations set forth above as if fully
restated here.

34.     The Benzene Premises Defendants knew, or in the exercise of ordinary
care, should have known, of the unreasonable risk of harm to human health posed by
exposure to benzene and benzene-containing products and materials.  Plaintiffs'
negligence claim against the Benzene Premises Defendants is separate and distinct from
any and all claims against each of the Supplier Defendants as a negligent manufacturer,
distributor, shipper, seller, purchaser, and/or transporter of benzene and benzene-
containing products and materials.  Each of the Benzene Premises Defendant was
negligent because it:

(a)     Failed to instruct WILLIAM P. HITE in the proper handling of benzene and benzene-containing products and materials to protect himself from harm;

(b)     Failed to provide WILLIAM P. HITE and those similarly situated with a safe work place;

(c)     Failed to provide adequate assistance and adequate equipment to protect WILLIAM P. HITE and those similarly situated from exposure to benzene and benzene-containing products and materials;

(d)     Failed to provide respirators to WILLIAM P. HITE and others similarly situated who worked with or around benzene and benzene-containing products and materials;

(e)     Failed to provide adequate warning and/or instruction with regard to the use of and exposure to benzene and benzene-containing products and materials;

(f)     Failed to recommend and/or provide adequate information to and training of WILLIAM P. HITE and those similarly situated to protect them from exposure to benzene and benzene-containing products and materials;

(g)     Failed to provide adequate supervision of WILLIAM P. HITE and those similarly situated;

(h)     Failed to conduct monitoring of WILLIAM P. HITE and others similarly situated to determine exposure to benzene and benzene-containing products and materials;

(i)     Failing to test and research benzene and products containing benzene to determine health effects on humans;

(j)     Failed to keep data, information and/or records pertaining to the health effects of exposure to benzene and benzene-containing products and materials;

(k)     Failed to provide adequate ventilation and other engineering controls to reduce or eliminate exposure of WILLIAM P. HITE and other persons working with or around benzene and benzene-containing products and materials;

(l)     Failed to provide adequate warning devices;

(m)    Failed to instruct WILLIAM P. HITE in the proper handling of benzene and benzene-containing products and materials to protect him from harm;

(n)     Included benzene in their products and processes when adequate
        substitutes for these carcinogenic chemicals were available;

(o)     Placed benzene and benzene-containing products and materials into the
        stream of commerce when adequate substitutes were available;

(p)     Included benzene in their products and processes, even though it was
        reasonably foreseeable and should have been anticipated that persons such
        as WILLIAM P. HITE working with or around the benzene and benzene-
        containing products and materials would inhale, ingest or otherwise absorb
        the carcinogens;

(q)     Included benzene in their products and processes when the Benzene
        Premises Defendants knew or should have known that said carcinogenic
        chemicals would have a toxic poisonous and highly deleterious affect
        upon the health of persons handling, ingesting or otherwise absorbing
        them, including WILLIAM P. HITE;

(r)     Failed to recall or cease using benzene and benzene-containing products
        and materials which the Benzene Premises Defendants had designed,
        manufactured, sold, distributed, purchased, or were currently using;

(s)     Provided WILLIAM P. HITE with benzene and benzene-containing
        products and materials which he was required to work with and be
        exposed to while performing his duties;

(t)     Committed such other and further acts and/or omissions as may be shown
        by the evidence.

35.     The Benzene Premises Defendants knew that WILLIAM P. HITE was

invited to, worked at and was otherwise permissibly present on premises maintained,

controlled and/or occupied by the Benzene Premises Defendants.  The work performed

by WILLIAM P. HITE all involved repair, maintenance, turnaround and replacement

work and not construction or construction of improvements.  At all relevant times, the

Benzene Premises Defendants maintained control of a portion of the work being done by

virtue of the contract with William P. Hite's employer and/or their status as owners or

lessees of the premises where the work was being performed and therefore owed a duty

to provide WILLIAM P. HITE with a safe place to work.  At all relevant times, the

Benzene Premises Defendants owed a duty to exercise ordinary care and caution to

maintain their premises in a safe and suitable manner for WILLIAM P. HITE and others

working or otherwise present on their premises.  The Benzene Premises Defendants

breached their duty to provide a safe place to work and to maintain their premises in a

safe and suitable manner.  The Benzene Premises Defendants also failed to exercise

ordinary care and caution for the health, safety and welfare of WILLIAM P. HITE.

36.     The acts and/or omissions of the Benzene Premises Defendants,

independently or in combination with one another, were a proximate cause of WILLIAM

P. HITE's illness, injuries and damages.

<u>THIRD CAUSE OF ACTION</u>

<u>PRICE-ANDERSON ACT CLAIM AGAINST THE RADIATION PREMISE</u>

<u>DEFENDANTS</u>

37.     Plaintiffs incorporate herein all of the allegations set forth above as if fully

restated here.

38.     While working as an employee of Phillips Getschow at the Dresden

Nuclear Power Plant owned and operated by the Radiation Premises Defendants,

WILLIAM P. HITE was over-exposed to radiation.

39.     WILLIAM P. HITE's over-exposure to radiation was a proximate cause of

his illness, injuries and damages, including multiple myeloma.

40.      WILLIAM P. HITE's over-exposure to radiation was the result of the

Radiation Premises Defendants:

(a)     Failing to instruct WILLIAM P. HITE in the proper handling of radiation
        to protect himself from harm;

(b)     Failing to provide WILLIAM P. HITE and those similarly situated with a safe place to work;

(c)     Failing to provide adequate assistance and equipment to WILLIAM P. HITE and those similarly situated;

(d)     Failing to provide appropriate personal protective equipment to WILLIAM P. HITE and others similarly situated who worked with or were exposed to radiation;

(e)     Failing to provide adequate warning and/or instruction with regard to radiation;

(f)     Failing to recommend and/or provide adequate information to and training of WILLIAM P. HITE and those similarly situated;

(g)     Failing to provide adequate supervision of WILLIAM P. HITE and those similarly situated;

(h)     Failing to conduct monitoring of WILLIAM P. HITE and others similarly situated to accurately determine radiation exposures;

(i)     Failing to test and research radiation to determine health effects on humans;

(j)     Failing to keep data, information and/or records pertaining to the health effects of exposure to radiation;

(k)     Failing to provide adequate engineering controls to reduce or eliminate exposure of persons working with or around their radiation products;

(l)     Failing to provide adequate warning devices;

(m)     Including radiation in their processes when adequate substitutes were available;

(n)     Including radiation in their processes, even though it was completely foreseeable and could or should have been anticipated that persons such as WILLIAM P. HITE working with or around radiation would be over-exposed;

(o)     Including radiation in their processes when the Radiation Premises Defendants knew or should have known that radiation would have a toxic, hazardous and highly deleterious affect upon the health of persons handling, ingesting, or otherwise absorbing it;

(p)     Failing to recall or cease using radiation which defendants had purchased
or were currently using; and

(q)     Committing such other and further acts and/or omissions as may be shown
by the evidence.

41.     While working at the Radiation Premise Defendants' Dresden Nuclear
Power Plant, WILLIAM P. HITE was repeatedly over-exposed to radiation. These over-
exposures included an incident where he was working in a room with a radioactive waste
tank that had a plugged pipe which, when unplugged by WILLIAM P. HITE, sprayed
him with excessive amounts of radioactive waste.  Because of the incident he was
required to shower at least three times, cut off his hair, and wear a radiation suit home
because his own clothes had been contaminated.  A second significant incident occurred
when burning off a hanger in Unit Three of the plant where hot slag from a reactor in a
contaminated area fell on him.  On neither occasion was WILLIAM P. HITE given a
whole body count to assess the precise amount of radioactive over-exposure he had
received.

42.     The film badges provided to WILLIAM P. HITE to record his radiation
exposures were inaccurate and inadequate to completely and accurately record all his
exposures.  In spite of the inadequacy of the film badges, even the exposure records
based on those film badges should indicate that WILLIAM P. HITE was over-exposed to
radiation above the 5 REM limit in effect at the time he was at the Dresden Nuclear
Power Plant.

43.     WILLIAM P. HITE performed all his work at the Radiation Premises
Defendants' Dresden Nuclear Power Plant as an employee solely of Phillips Getschow.

44.     At all times while working at the Dresden Nuclear Power Plant, WILLIAM P. HITE was directed and controlled by the superintendent and foremen of Phillips Getschow.   The Radiation Premises Defendants would give a work order to the Phillips Getschow superintendent who would pass it on to his general foreman and foremen who would select the Phillips Getschow employees to do the work and direct them in the work.  The Phillips Getschow foremen would determine when to start work, take breaks and stop work for the day.  The only contact WILLIAM P. HITE had with employees or other contractors of the Radiation Premises Defendants was for entry onto the site, a brief instruction about radiation, and radiation technicians who would provide WILLIAM P. HITE with a film badge and at times monitor radiation exposures from outside the work area.

45.     WILLIAM P. HITE had no direct personal contact with any employee or other contractor of the Radiation Premises Defendants and at no time did any employee of the Radiation Premises Defendants supervise or direct WILLIAM P. HITE in the pipefitting work he performed.

46.     Prior to the creation of the Institute of Nuclear Power Operations (INPO) in 1979 and its new safety regimen, radiation exposures to contractors' workers such as WILLIAM P. HITE were not counted against the nuclear power plants' exposure limit but rather deemed separate.  WILLIAM P. HITE was not considered or treated as an employee of the Radiation Premises Defendants.

47.     While the Radiation Premises Defendants were responsible for radiation exposure issues on the site, at all other times and for all other matters Phillips Getschow was responsible for, directed and controlled WILLIAM P. HITE on the site.  In

particular, the Radiation Premises Defendants provided no supervision, direction or control over the pipefitting work performed by WILLIAM P. HITE.

FOURTH CAUSE OF ACTION

WILLFUL AND WANTON MISCONDUCT, GROSS NEGLIGENCE, AND INTENTIONAL, KNOWING AND RECKLESS WRONGDOING OF THE SUPPLIER DEFENDANTS AND BENZENE PREMISES DEFENDANTS

48.     Plaintiffs incorporate herein all of the allegations set forth above as if fully restated here.

49.     The manufacture, distribution and use of benzene and benzene-containing products and materials, which are all unreasonably dangerous products and materials, posed an extreme, unreasonable and unnecessary of risk of harm to persons using or being exposed to such products and materials, such as WILLIAM P. HITE.

50.     The acts and/or omissions of the Supplier Defendants and the Benzene Premises Defendants as set forth above indicates an actual conscious and deliberate indifference towards the rights, health, safety and welfare of others, including WILLIAM P. HITE, and amounts to willful and wanton misconduct. Plaintiffs are entitled to recover punitive or exemplary damages for the willful and wanton misconduct of these defendants

51.     During WILLIAM P. HITE'S work as a pipefitter he was needlessly exposed by both the Supplier Defendants and the Benzene Premises Defendants to benzene and benzene-containing products and materials.  These defendants had actual knowledge for decades that exposure to benzene and benzene-containing products and

materials could cause diseases of the hematopoietic system, yet, in spite of such knowledge, allowed workers such as WILLIAM P. HITE to be exposed to and use this toxic and cancerous chemical in the work environment.  This constituted gross negligence and plaintiffs are entitled to recover punitive or exemplary damages for the gross negligence of these defendants.

52.     WILLIAM P. HITE's multiple myeloma was a natural, direct and/or probable consequence of his exposure to benzene and benzene-containing products and materials.  The Supplier Defendants and the Benzene Premises Defendants intentionally, knowingly and/or recklessly exposed WILLIAM P. HITE to benzene by the conditions of work they imposed upon him.  These defendants had actual knowledge that the conditions of work would cause exposure to benzene that constituted nonconsensual, harmful and offensive bodily contact.  These defendants' intentional, knowing and/or reckless misconduct caused the benzene exposure that led directly and naturally to the development of multiple myeloma in WILLIAM P. HITE.  These defendants intentionally, knowingly and/or recklessly exposed WILLIAM P. HITE to benzene with the actual knowledge that such exposure was substantially certain to cause serious injury to WILLIAM P. HITE and those similarly situated. Plaintiffs are entitled to recover punitive or exemplary damages for the intentional, knowing and reckless misconduct of these defendants.

53.     The willful and wanton misconduct, gross negligence and intentional, knowing and reckless misconduct of the Supplier Defendants and the Benzene Premises Defendants was a proximate cause of WILLIAM P. HITE's disease and Plaintiffs' damages.  As a result of said misconduct, Plaintiffs assert a claim for punitive or

exemplary damages in an amount deemed fair and just by the jury and allowed by Illinois law.

## FIFTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

54.     Plaintiffs incorporate herein all of the allegations set forth above as if fully restated here.

55.     PATRICIA A. HITE, wife of Plaintiff, WILLIAM P. HITE, asserts her individual cause of action for loss of consortium proximately caused by the wrongful conduct of the defendants as set forth above.  Consortium is the mutual right of a husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage, for which elements of damage PATRICIA A. HITE is entitled and herein seeks to recover.  As a direct and proximate result of the aforesaid acts of all defendants, PATRICIA A. HITE sustained injuries and damages for her loss of consortium.

WHEREFORE, the Plaintiffs, WILLIAM P. HITE and PATRICIA HITE, request a judgment against the Defendants, both jointly and severally, for compensatory damages in an amount as yet to be determined but in excess of the jurisdictional requirement for this court, punitive or exemplary damages in an amount to be determined at trial, prejudgment and post-judgment interest for all elements of damages that such interest is allowed for pursuant to Illinois law and such other relief as the Court deems just and equitable.

Respectfully submitted,

/s/Andrew S. Lipton
Attorney for Plaintiffs

Andrew S. Lipton
LIPTON LAW, LLC
420 E. 11th Street
Durango, CO 81301
(970) 382-3819

Herschel Hobson
HOBSON & BRADLEY
2190 Harrison Ave.
Beaumont, TX 77701-3805
(409) 838-6410

Daniel A. Schwarz
SCHWARZ & SCHWARZ
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, PA 19103
(215) 925-1200

Kevin J. Conway, IL Bar No. 312271
COONEY AND CONWAY
120 N. LaSalle St., 30th Floor
Chicago, IL 60602
(312) 236-6166

Robert J. Mongelluzzi
SALTZ MONGELUZZI BARRETT & BENDESKY, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
(215) 49608282

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

/s/ Andrew S. Lipton

_____

Andrew S. Lipton

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2009 he filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which sent electronic notification of such filing to the following:

Kevin J. Conway, Esq.
Cooney & Conway
120 N. LaSalle St., 30th Floor
Chicago, IL 60602
Phone: (312) 236-6166
Fax: (312) 443-1286
Email: kconway@cooneyconway.com
*Attorneys for Plaintiffs*

Herschel Hobson
Hobson & Bradley
2190 Harrison Avenue
Beaumont, TX 77701-3805
Phone: (409) 838-6410
Email: kattlguard@aol.com
*Attorney for Plaintiffs*

Andrew S. Lipton
Lipton Law, LLC
420 E. 11th Street
Durango, CO 81301
Phone: (970) 382-3819
Email: alipton@liptonlaw.net
*Attorney for Plaintiffs*

Stephanie R. Stomberg
Bradfprd D. Roth
Cassiday Shade, LLP
20 N. Wacker Drive, Suite 1040
Chicago, Illinois 60606
Phone: (312) 641-3100
Email: srs@cassiday.com
         bdr@cassiday.com
*Attorneys for Apex Oil Company, Inc.*

Daniel A. Schwarz
Schwarz & Schwarz
One Liberty Place, 51st Floor
1650 Market Street
 Philadelphia, PA 19103
Phone: (215) 925-1200
Email: dschwarz@schwarzlegal.com
*Attorney for Plaintiffs*

Robert J. Mongelluzzi
Saltz Mongeluzzi Barrett & Bendesky, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 49608282
Email: ajones@smbb.com
*Attorney for Plaintiffs*

John P. Phillips
Katherine Chao
Paul, Hastings, Janofsky & Walker LLP
55 Second Street, 24th Floor
San Francisco, CA 94105
Phone: (415) 856-7000
Fax: (415) 856-7100
Email: johnphillips@paulhastings.com
         katharinechao@paulhastings.com
*Attorneys for Exelon Generation Co., LLC f/k/a and successor in interest to Commonwealth Edison Company*

Larry Chilton
Courtney D. Carter
Chilton Yambert & Porter LLP
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
Phone: (312) 460-8000
Fax: (312) 460-8299
Email: lchilton@cyp-law.com
         ccarter@cyp-law.com
*Attorneys for Exxon Mobile Corporation, Mobil Chemical Company, Inc., Union Oil Company of California, BP Amoco Chemical Company, BP Corporation North America Inc. and BP Products North America Inc.*

Robert L. Shuftan
Brian W. Lewis
Megan C. Millirons
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, 28th Floor
Chicago, IL 60606-1229
Phone: (312) 201-2000
Fax: (312) 201-2555
Email:  lewis@wildman.com
        shuftan@wildman.com
        millirons@wildman.com
*Attorneys for United States Steel Corporation*


Robin G. Weaver, Esq.
Squire Sanders & Dempsey LLP
4900 Key Tower
127 Public Square
Cleveland, OH 44114
Phone: (216)479-8572
Fax: (216) 479-8780
Email: rweaver@ssd.com
*Attorneys for BP Amoco Chemical Company;*
*BP Corporation North America Inc.; and BP*
*Products North America, Inc.*


/s/ Andrew S. Lipton
_____
Andrew S. Lipton